**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 12-cv-01790-REB-CBS

KEVIN JOHNSTON,

    Plaintiff,

v.

NORTH TABLE MOUNTAIN WATER AND SANITATION DISTRICT, and
BART SPERRY,

    Defendants.

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

**Blackburn, J.**

This matter is before me on the **Defendants' Motion for Summary Judgment** [#40][1] filed May 9, 2013. The plaintiff filed a response [#47], and the defendant filed a reply [#49]. I grant the motion.[2]

### I. JURISDICTION

I have jurisdiction over this case under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1367 (supplemental).

---

[1] "[#40]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

[2] The issues raised by and inherent to the motion for summary judgment are fully briefed, obviating the necessity for evidentiary hearing or oral argument. Thus, the motion stands submitted on the briefs. *Cf.* FED. R. CIV. P. **56(c)** and **(d)**. *Geear v. Boulder Cmty. Hosp.,* 844 F.2d 764, 766 (10th Cir.1988) (holding that hearing requirement for summary judgment motions is satisfied by court's review of documents submitted by parties).

## II.  STANDARD OF REVIEW

Summary judgment is proper when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. **Fed. R. Civ. P.** 56(c); **Celotex Corp. V. Catrett**, 477 U.S. 317, 322 (1986). A dispute is "genuine" if the issue could be resolved in favor of either party. **Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.**, 475 U.S. 574, 586 (1986); **Farthing v. City of Shawnee**, 39 F.3d 1131, 1135 (10th Cir. 1994). A fact is "material" if it might reasonably affect the outcome of the case. **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 248 (1986); **Farthing**, 39 F.3d at 1134.

A party who does not have the burden of proof at trial and seeks summary judgment must show the absence of a genuine fact issue. **Concrete Works, Inc. v. City & County of Denver**, 36 F.3d 1513, 1517 (10th Cir. 1994), cert.denied, 115 S.Ct. 1315 (1995). In contrast, a movant who bears the burden of proof must submit evidence to establish every essential element of its claim or affirmative defense. **See in Ribozyme Pharmaceuticals, Inc. Securities Litigation**, 209 F.Supp.2d 1106, 1111 (D. Colo. 2002). In either case, once the motion has been properly supported the burden shifts to the nonmovant to show, by tendering depositions, affidavits, and other competent evidence, that summary judgment is not proper. **Concrete Works**, 36 F.3d at 1518. All the evidence must be viewed in the light most favorable to the party opposing the motion. **Simms v. Oklahoma ex rel Department of Mental Health and Substance Abuse Services**, 165 F. 3d 1321, 1326 (10th Cir.), cert. denied, 120 S. Ct. 53 (1999). However, conclusory statements and testimony based merely on conjecture or subjective belief are not competent summary judgment evidence. **Rice v. United**

*States*, 166 F.3d 1088, 1092 (10th Circ.), cert. denied, 120 S. Ct 334 (1999).

## III. FACTUAL BACKGROUND

For 24 years, the plaintiff, Kevin Johnston, was an employee of defendant North Table Mountain Water and Sanitation District. Mr. Johnston's employment was terminated on December 15, 2010. In his complaint [#38], Mr. Johnston asserts two claims based on his termination.

From 2000 to 2010, Mr. Johnston was the Distribution/Collection Supervisor for the district. In 2009, the District Manager directed all staff, including Mr. Johnston, to identify potential cost saving ideas for the district. As the Distribution/Collection Supervisor, Mr. Johnston was required to monitor and control expenditures, prepare cost estimates, and gather data to produce annual budgets in conjunction with long-term planning efforts. In addition, he routinely made efforts to identify cost savings measures for the district.

On July 28, 2010, Mr. Johnston met with Rick Jeschke and defendant Bart Sperry. Mr. Jeschke formerly was District Manager for the district. Mr. Sperry succeeded Mr. Jeschke as District Manager. During this meeting, Mr. Jeschke and Mr. Sperry discussed with Mr. Johnston allegations that Mr. Johnston was disrespectful to engineers employed by the district. Mr. Johnston denies that he was disrespectful to district engineers. During this meeting, Mr. Johnston cited three district engineering projects which he thought were not cost effective.

On September 28, 2010, Mr. Johnston met the Board of Directors of the district during one of the board's regularly scheduled meetings. At this meeting, Mr. Johnston expressed the opinion that four district engineering projects were not cost effective. He cited the three projects he had discussed previously with Mr. Jeschke and Mr. Sperry

3

and one additional project.  During this meeting, a board member asked Mr. Johnston to express an opinion about a fifth project, a five year project to upgrade the district's sewer system.  Mr. Johnston opined that the project was not necessary.

In his deposition, Mr. Johnston was asked if he attended the September 28, 2010, meeting of the board in his capacity as the Distribution/Collection Supervisor. *Motion for summary judgment* [#40], Exhibit B (Johnston Deposition), 83:5-12.  Mr. Johnston responded: "Yes, while I was a district resident also, but I - what I had to discuss with them was from distribution/collection supervisor, yes." *Johnston Deposition*, 83:10-12.  Mr. Johnston felt it was his duty as an employee of the district to advise the board about what he perceived to be the loss of money on the four projects he cited to the board.  *Johnston Deposition*, 107:2-6.  Additional evidence concerning Mr. Johnston's role at this meeting, including Mr. Johnston's affidavit, is discussed below.

On October 14, 2010, Wendy Weiman, an engineer employed by the district, presented to Mr. Sperry a written complaint concerning Mr. Johnston.  Ms. Weiman complained of a number of inappropriate behaviors displayed by Mr. Johnston in the work place.  On October 19, 2010, Mr. Sperry gave Mr. Johnston a written warning for insubordinate conduct and other conduct in violation of the district's policies.  A short time later, Mr. Sperry and Mr. Jeschke spoke to Mr. Johnston about the behavior he exhibited on November 2, 2010, behavior which Mr. Sperry felt was inappropriate.

In mid-November of 2010, the district's Board of Directors hired Mountain States Employers Council (MSEC) to conduct an investigation into the allegations raised by Ms. Weiman in her written complaint of October 14, 2010.  The MSEC investigator, Monica Aldridge, interviewed 16 current and former district employees, including Mr.

4

Johnston and Ms. Weiman. On December 8, 2010, Ms. Weiman issued a report describing her investigation and her conclusions. Ms. Aldridge concluded that Mr. Johnston engaged in 17 separate instances of inappropriate conduct. Based on this report, the district's Board of Directors directed Mr. Sperry to terminate Mr. Johnston's employment. Mr. Johnston's employment was terminated on December 15, 2010.

According to Mr. Johnston, most of the claims that he behaved inappropriately are incorrect or, in some cases, his comments and behavior were misinterpreted. He claims Ms. Weiman's complaints were an effort by Ms. Weiman to save her job at the expense of Mr. Johnston's job. Mr. Johnston asserts that the district's engineers believed that Mr. Johnston was behind an effort to have their positions terminated. In Mr. Johnston's view, the engineers were convinced that Mr. Johnston was the person who complained to the board about the engineering department, causing the termination of Mr. Jeschke and the loss of Ms. Weiman's full-time position. In November 2010, the board changed Ms. Weiman's full-time position to a part-time position.

Mr. Johnston says his termination was motivated by the desire of Mr. Sperry and Ms. Weiman to retaliate against Mr. Johnston because Mr. Johnston was seen as having caused Mr. Jeschke's termination. He claims the board ordered the termination of his employment to cover its malfeasance in office.

Based on these facts, Mr. Johnston asserts two claims for relief in his complaint [#38]. First, he asserts a claim under 42 U.S.C. § 1983, alleging that the defendants terminated his employment in retaliation for his exercise of his First Amendment right to free speech. Mr. Johnston claims the defendants retaliated against him based on his "blowing the whistle" on district engineering projects that were not cost effective and on

the illegitimacy of the district's five year project to upgrade the district's sewer system. Second, Mr. Johnston asserts a state law claim for wrongful discharge in violation of public policy. The defendants argue they are entitled to summary judgment on both of the plaintiff's claims.

## IV.  ANALYSIS

### A.  First Amendment Retaliation

Mr. Johnston's First Amendment retaliation claim must be analyzed under the standards established in **Pickering v. Bd. of Educ.**, 391 U.S. 563 (1968) and **Garcetti v. Ceballos**, 547 U.S. 410 (2006). Under the **Garcetti/Pickering** test, I must examine (1) whether the speech was made pursuant to an employee's official duties; (2) whether the speech was on a matter of public concern; (3) whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests; (4) whether the protected speech was a motivating factor in the adverse employment action; and (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct. **Brammer-Hoelter v. Twin Peaks Charter Academy**, 492 F.3d 1192, 1202-1203 (10th Cir. 2007).

The defendant relies on the proposition that an employee's speech made as part of the employee's fulfillment of his or her duties as an employee does not receive First Amendment protection. "(W)hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." **Garcetti**, 547 U.S. at 421. "If the employee speaks pursuant to his official duties, then there is no constitutional protection because the restriction on speech

6

'simply reflects the exercise of employer control over what the employer itself has commissioned or created.'" *Brammer-Hoelter*, 492 F.3d at 1202 (quoting *Garcetti*, 547 U.S. at 422).

As noted above, when Mr. Johnston reported to the board his opinion that four engineering projects were not cost effective and his opinion that the five year upgrade of the district's sewer system was not cost effective, he perceived himself to be acting as the Distribution/Collection Supervisor for the district under a duty to advise the board about what he saw as a loss of money on these projects. This perception is consistent with other facts evidenced in the record outlining the duties of the Distribution/Collection Supervisor and all employees of the district. In his deposition, Mr. Johnston was asked about his allegation that he spoke to the board in his role as a resident of the district concerned about the board's wasteful use of money. In essence, Mr. Johnston claimed he spoke to the board as both an employee of the board and as a resident of the North Table Mountain Water and Sanitation District. *Johnston Deposition*, 99:13 - 106:25.

Mr. Johnston submitted an affidavit in support of his response to the motion for summary judgment. In his affidavit, he says he did not have the authority as the Distribution/Collection Supervisor to appear before the board. *Johnston Affidavit* [#48], ¶ 14. Contrary to his deposition testimony, he says in his affidavit that he appeared before the board on September 28, 2010, as a resident and member of the district. *Johnston Affidavit* [#48], ¶¶ 14 - 15. In his response to the motion for summary judgment, Mr. Johnston argues that he met with the board on September 28, 2010 "in his capacity as a **citizen** of the District." *Response* [#47], p. 4 (emphasis in original).

On this point, Mr. Johnston's affidavit contradicts directly his deposition testimony. Although an affidavit that conflicts with the affiant's prior sworn statements

7

cannot be disregarded summarily, a court may disregard an affidavit that is nothing more than an attempt to create a sham issue of fact. *Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir.1986).  The reason for such a rule is clear:  "[T]he utility of summary judgment . . . would be greatly undermined if a party could create an issue of fact merely by submitting an affidavit contradicting his own prior testimony." *Id.*

> Factors relevant to the existence of a sham fact issue include whether the affiant was cross-examined during his earlier testimony, whether the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence, and whether the earlier testimony reflects confusion which the affidavit attempts to explain.

*Id.* None of these factors pertain to Mr. Johnson's revision of his testimony as reflected in his affidavit. Therefore, I rely on Mr. Johnston's deposition testimony to determine what the evidence in the record shows concerning the role in which Mr. Johnston was operating when he appeared before the board on September 28, 2010.

Viewing the evidence in the record in the light most favorable to Mr. Johnston, Mr. Johnston was acting as both an employee of the district and as a resident and member of the district when he met with the board on September 28, 2010.  In this hybrid circumstance, I conclude that the rule in *Garcetti* controls.  When Mr. Johnston made statements to the board on September 28, 2010, and at other times during his employment with the district, the statements were made as part of his official duties as an employee.  The constitution does not insulate these statements from discipline by the board.  *Garcetti*, 547 U.S. at 421.  Given this law, the defendants are entitled to summary judgment on Mr. Johnston's First Amendment retaliation claim.

### B.  Wrongful Discharge in Violation of Public Policy

The defendants assert that the Colorado Governmental Immunity Act (CGIA)

bars the plaintiff's state law wrongful discharge claim.  Under §24-10-106(1), C.R.S.

> A public entity shall be immune from liability in all claims for injury which lie in tort or could lie in tort regardless of whether that may be the type of action or the form of relief chosen by the claimant except as provided otherwise in this section.

Suits against public employees or officials are addressed in §24-10-118(2)(a), C.R.S.

> A public employee shall be immune from liability in any claim for injury, whether brought pursuant to this article, section 29-5-111, C.R.S., the common law, or otherwise, which lies in tort or could lie in tort regardless of whether that may be the type of action or the form of relief chosen by a claimant and which arises out of an act or omission of such employee occurring during the performance of his duties and within the scope of his employment unless the act or omission causing such injury was willful and wanton...

Defendant North Table Mountain Water and Sanitation District is a public entity and defendant Bart Sperry is sued in this case as an employee of the district.  Mr. Johnston's claim of wrongful discharge in violation of public policy is a claim in the nature of a tort claim.  None of these propositions is disputed by the parties.  Mr. Johnston contends the waiver of immunity stated in §24-10-106(1)(f), C.R.S. is applicable to his state law claim against the district and Mr. Sperry.  In relevant part, that statute states the waiver as follows:

> Sovereign immunity is waived by a public entity in an action for injuries resulting from:
>
> (f) The operation and maintenance of any public water facility [or] . . . sanitation facility . . . by such public entity;

The plaintiff bears the burden of proof as to whether the defendants' immunity has been waived under the CGIA because immunity concerns the subject matter jurisdiction of the court.  **See Swieckowski v. City of Fort Collins**, 934 P.2d 1380 (Colo.1997); **Capra v. Tucker**, 857 P.2d 1346 (Colo.App.1993).

9

"(T)he [CGIA] requires that exceptions to governmental immunity be interpreted narrowly in order to avoid imposing liability not specifically provided for in the statute." ***City and County of Denver v. Gallegos***, 916 P.2d 509, 510 (Colo.1996). The Colorado Court of Appeals has found that "sovereign immunity is waived only if the act or omission relates to the purpose of the facility." ***Richland Development Co. v. East Cherry Creek Valley Water & Sanitation District***, 934 P.2d 841, 843 (Colo. App.1996). Under the CGIA, a "'Public water facility' means structures and related apparatus used in the collection, treatment, or distribution of water for domestic and other legal uses that is operated and maintained by a public entity." §24-10-103(5.7). The CGIA defines "operation" as "the act or omission of a public entity or public employee in the exercise and performance of the powers, duties, and functions vested in them by law with respect to the purposes of any ... public water [or] sanitation ... facility." §24-10-103(3)(a), C.R.S.  The purpose of a water facility is to supply water for domestic and other public and private purposes by any available means and to provide necessary reservoirs, treatment works, and facilities. §32-1-104(18), C.R.S.; ***Richland Dev. Co., L.L.C. v. E. Cherry Creek Valley Water & Sanitation Dist.***, 934 P.2d 841, 844 (Colo. Ct. App. 1996)  The purpose of a sanitation facility is to provide a sewer system for public use. ***Id.***

Generally, actions by a public entity or employee that are indirectly related to the purpose of the facility, the operation of the facility, and the legal duties of the entity concerning the facility are not within the limited waivers of sovereign immunity under the CGIA.  For example, in ***Richland Development***, the court determined that the alleged negligence of a water and sanitation district in representing the number of water and sewer taps available in the district did not fall within the waiver of sovereign immunity for

the operation and maintenance of a public water or sanitation facility. ***Richland Development***, 934 P.2d at 844. The court found that the functions of "record keeping and responding to inquiries as to the availability of water and sewer taps are, at most, ancillary to" the statutory purposes of a water and sanitation district. *Id*. Given that ancillary relationship, the court concluded that the alleged negligence did not fall within the waiver of sovereign immunity stated in §24-10-106(1)(f), C.R.S. *Id*.

Similarly, in ***Howard Through Young v. City & Cnty. of Denver***, 837 P.2d 255, 257-58 (Colo. Ct. App. 1992), the court found that the alleged wrongful actions of a sheriff did not fall within the waiver of sovereign immunity for the operation of a jail. At issue were claims the sheriff was negligent in investigating a prisoner's criminal history, in making a bond recommendation to the judge, and in executing arrest warrants.

> The Sheriff is the keeper of the jail and is responsible for maintaining the jail for the detention, safekeeping, and confinement of persons lawfully committed. Sections 17-26-101 and 17-26-102, C.R.S. (1986 Repl.Vol. 8A). The Sheriff's duties in keeping the jail are to receive and safely detain every person duly committed thereto. The Sheriff specifically "shall not, without lawful authority, let out of such jail, on bail or otherwise, any such person." Section 17-26-103, C.R.S. (1991 Cum.Supp.).

*Id*. at 257. The court concluded that bond investigations and recommendations and the execution of search warrants were not included in the duties tied to the operation of the jail. *Id*. at 257 - 258. As a result, the court found that the alleged negligent actions of the sheriff were not within the waiver of sovereign immunity for the operation of a jail. *Id*.

In ***Dobson v. City & Cnty. of Denver***, 81 F. Supp. 2d 1080, 1088 (D. Colo. 1999), aff'd, 13 F. App'x 842 (10th Cir. 2001), the court addressed a claim against the Denver Waste Water Management Division (WWMD). A WWMD employee shot and killed a security guard working at a WWMD facility. The mother of the guard and the

11

personal representative of the guard's estate filed suit against the WWMD asserting, *inter alia*, state law tort claims. The **Dobson** court held that the plaintiffs' state law claims did not fall within the waiver of sovereign immunity for the operation and maintenance of a public water facility or sanitation facility, as stated in §24-10-106(1)(f), C.R.S. *Id*. at 1087 - 1089. The court concluded that "maintaining a safe work environment by diligently following personnel policies is at best ancillary to the purpose of operating a sanitation facility and therefore barred by the [CGIA]." *Id*. at 1089.

In the present case, Mr. Johnston's state law claim concerns the district's exercise of its authority to hire and fire employees. Similar to **Richland Development**, **Howard**, and **Dobson**, the personnel policies and practices of the North Table Mountain Water and Sanitation District are related only obliquely to the purposes, operations, and duties of the district as a public water and sanitation facility. Given that oblique relationship, I conclude that the actions of the district and Mr. Sperry, as evidenced in the record, do not fall within the waiver of sovereign immunity in §24-10-106(1)(f), C.R.S. Under §24-10-106(1), C.R.S., the district is shielded from liability on Mr. Johnston's state law claims in this case.

## V.  CONCLUSION & ORDERS

Viewing the evidence in the record in the light most favorable to Mr. Johnston, I conclude that the defendants are entitled to summary judgment on Mr. Johnston's two claims. First, under the **Garcetti/Pickering** test, Mr. Johnston cannot assert a claim against the defendants for First Amendment retaliation. Second, under the CGIA, the defendants are immune from Mr. Johnston's state law claim.

**THEREFORE, IT IS ORDERED** as follows:

1. That the **Defendants' Motion for Summary Judgment** [#40] filed May 9,

2013, is **GRANTED**;

    2. That the claims asserted by the plaintiff, Kevin Johnston, in his complaint [#38] are **DISMISSED** with prejudice;

    3. That **JUDGMENT SHALL ENTER** in favor of the defendants, North Table Mountain Water and Sanitation District and Bart Sperry, against the plaintiff, Kevin Johnston;

    4. That the defendants are **AWARDED** their costs to be taxed by the clerk of the court under FED. R. CIV. P. 54(d)(1) and D.C.COLO.LCivR 54.1;

    5. That the **Expedited Unopposed Motion for Additional Time in Which to File Joint Exhibit List and Deposition Designations** [#51] filed July 3, 2013, is **DENIED** as moot;

    6. That the trial set to begin August 19, 2013, at 8:30 a.m., is **VACATED**; and

    7. That this case is **DISMISSED**.

Dated August 9, 2013, at Denver, Colorado.

                                          **BY THE COURT:**

*Robert E. Blackburn*
Robert E. Blackburn
United States District Judge